UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LUXOTTICA GROUP S.p.A.,**<br><br>Plaintiff,<br><br>v.<br><br>**ACCESSORY CONSULTANTS LLC,**<br><br>Defendant. | Civ. No. 19-11732 (KM)(MAH)<br><br>**AMENDED OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion of the plaintiff, Luxottica Group S.p.A for a default judgment against the defendant, Accessory Consultants LLC, pursuant to Fed. R. Civ. P. 55(b)(2). (DE 10) This action arises from Accessory Consultants' alleged sale of counterfeit Ray Ban sunglasses, in violation of Luxottica's rights under the Lanham Act and state law. For the reasons set forth below, the motion is granted.

## I.   STANDARD FOR ENTRY OF DEFAULT JUDGMENT

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 03-cv-1969, 2006 WL 680533, at

1

*1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, CIV.A. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *accord Gold Kist*, 756 F.2d at 19.

## II.     DISCUSSION

### a. Service & Defendant's Failure to Respond

This action was filed on April 29, 2019. The registered agent for the defendant LLC was served in person on May 20, 2019, triggering the usual twenty-one day deadline to respond under Fed. R. Civ. P. 12(a). (DE 7) Defendant did not answer or otherwise respond to the complaint. On June 26, 2019, the Clerk entered default. (Entry following DE 8) On October 7, 2019, Luxottica moved for entry of a default judgment. (DE 11) The prerequisites to a default judgment are therefore met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

### b. *Gold Kist* factors

I next evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Gold Kist,* 756 F.2d at 19; *see also Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987).

#### i. Meritorious defense (*Gold Kist* factor 1)

As to the first factor, my review of the record reveals no suggestion that Luxottica's claims are legally flawed or that there is a meritorious defense to them. *See Doe*, 2013 WL 3772532, at *5.

Accepting the factual allegations as true, I find that Luxottica has stated a claim under the Lanham Act. Luxxotica manufactures and markets, *inter alia*, well-known items of eyewear, including sunglasses bearing the Ray-Ban® trademarks. (*See* DE 11) The complaint, corroborated by affidavits, alleges causes of action for trademark infringement, counterfeiting, false designation of origin, false advertising, unfair competition, and trademark dilution. Infringement and counterfeiting are aimed at use that is "likely to cause confusion, or to

cause mistake or to deceive." 15 U.S.C. § 1114.[1]

I cannot improve on Judge Kugler's succinct statement of the applicable standards in a recent case involving Ray-Ban sunglasses:

> To prevail on its trademark infringement and unfair competition claims, the plaintiff must prove three elements: 1) its ownership of the Ray Ban® marks, which are 2) valid and legally protectable, and 3) defendants' use of those marks is likely to create confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210–11 (3d Cir. 2000). To establish elements 1) and 2), a USPTO-issued trademark registration suffices. *E.A. Sween Co., Inc. v. Deli Exp. Of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D. N.J. 2014). Here, plaintiff presented registration certificates of its Ray Ban® marks. . . . Further, the Court observes from USPTO records that the marks are unchallenged, the required renewal registrations have been duly paid, and the registered classes of the marks cover the products plaintiff alleges were sold by defendants. On their face, the marks appear valid; and thus, the first two elements are satisfied.

*Luxottica Group, S.p.A. v. Shore Enuff,* 2019 WL 4027547 at *4 (D.N.J. Aug. 27, 2019) (Kugler, J.). In this case, likewise involving Ray-Ban sunglasses, Luxxotica presented similar allegations and evidence of registration. The complaint so alleges, and Luxottica has submitted two affidavits regarding purchases of the counterfeit, infringing items. (DE 10-2 and 10-3) A comparison reveals that the purchased counterfeit sunglasses bear seemingly identical copies of two of Luxottica's registered Ray Ban trademarks, including Reg. Nos. 1,093,658 and 1,320,460, which have become incontestable. (*See* DE 11, 10-2)

I therefore move to the third factor: use of confusingly similar

---

[1]    Because the complaint sets forth a claim of counterfeiting under the Lanham Act, and because state unfair competition law is similar, I follow the usual practice and do not conduct a separate, redundant state-law analysis. *Luxottica Group, S.p.A. v. Shore Enuff,* 2019 WL 4027547 at *4 (D.N.J. Aug. 27, 2019) (Kugler, J.).

marks. This factor will be found when ordinary consumers are likely to conclude that the marks used in commerce by the defendant and the plaintiff's registered marks identify a common source, affiliation, connection, or sponsorship. *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 216 (3d Cir. 2000). In a contested matter, courts have looked to the ten so-called "*Lapp* factors." *See Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 462 (3d Cir. 1983). Because the defendant has failed to respond, the Court lacks a sufficient basis for a full analysis. But where, as here, the goods sold by the plaintiff and the defendant are similar (indeed, for all practical purposes, identical) a comparison of the registered and allegedly infringing marks will ordinarily dispose of the case. *Shore Enuff*, 2019 WL 4027547 at *5.[2]

In this case, a comparison reveals that the purchased counterfeit sunglasses bear copies of two of Luxottica's registered Ray Ban trademarks, including Reg. Nos. 1,093,658 and 1,320,460, which are not genuine but closely resemble the genuine marks. (*See* Cplt., DE 10-2, DE 10-3) The parties farther down in the distribution chain have settled with Luxottica and have identified Accessory Consultants (and its principal, Steven Poznak) as the supplier which sold them the goods. (DE 10-2) *See generally* 15 U.S.C. § 1127 (broadly defining use of mark "in commerce"). A cause of action for counterfeiting is established. In addition, the record contains sufficient allegations of dilution, in that these are well-

---

[2] To put it another way, this is a case of alleged counterfeiting, and counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."). Indeed, confusing the customer is the whole purpose of creating counterfeit goods. *Cf. Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).

established, "famous" trademarks. (Cplt. ¶¶ 31–33, DE 10-2 ¶¶ 3–6, DE 10-3 ¶¶ 3–8) *See Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC,* 212 F.3d 157, 163 (3d Cir. 2000).[3]

The Lanham Act cause of action is amply established. The materials before the Court do not suggest any meritorious defense.

> ii. Prejudice suffered by party seeking default & culpability of the parties subject to default (*Gold Kist* factors 2, 3)

The second and third factors also weigh in favor of default.

Defendant has failed to appear and defend itself in any manner. As a result, the plaintiff, unless default judgment is entered, will be unable to vindicate its rights. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, CIV. 11-624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that "Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion.").

Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default. *Id.* And '[t]here is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent.'" *Id.* at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08–2108, 2009 WL 536403, at *1

---

[3] I take judicial notice that Wayfarer sunglasses, as of 1984, could be referred to in a popular song without further explanation. *See* Don Henley, Mike Campbell, "The Boys of Summer" (1984 Cass County Music/Wild Gator Music ASCAP) ("You got that hair slicked back and those Wayfarers on, baby" (final chorus; capitalization in original)).

Indeed, it is not much of an exaggeration to state that these sunglasses are popular enough to have generated their own trademark jurisprudence. The U.S District Court for the Southern District of Florida, for example, noted that Luxxotica had filed "numerous lawsuits within this district in an effort to protect the RAY-BAN marks and their associated goodwill." *Luxottica Group S.p.A. v. Individual, Partnership, etc.,* 2017 WL 9324773 at *3 (S.D. Fla. 2017).

(D.N.J. Feb. 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment)).

The only possible conclusion based on this record is that the defendant violated the plaintiff's rights under the Lanham Act; that defendant, not Luxottica, is culpable both for the underlying conduct and for the failure to answer the complaint; and that Luxottica was prejudiced as a result. Accordingly, I find that the entry of a default judgment is appropriate.

### c. Relief

Luxottica seeks statutory damages and an injunction.

*a. Statutory damages*

Statutory damages are available under 15 U.S.C. § 1117. They are, in this Court's view, particularly appropriate where, as here, the defendant's failure to respond has made it difficult or impossible for the plaintiff to demonstrate its actual damages. Statutory damages are available in an amount of $1000 to $200,000 per counterfeit mark, or type of good or service sold. In the case of willful infringement, the court may impose damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c).[4]

---

[4] (c) **Statutory damages for use of counterfeit marks** In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

> Such willful conduct must have included an "aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark . . . calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured.'" *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-02662, 2009 WL 2147843, at *6 (D.N.J. 15 July 2009) [citing *Chanel v. Gordashevsky*, 558 F. Supp. 2d 532, 538 (D.N.J. 2008) [internal citations omitted]].

*Shore Enuff,* 2019 WL 4027547 at *6.

Willfulness may be inferred where, as here, the defendant made use of a substantially identical copy of a well-known mark. *Id.* (use of Ray Ban mark); *see* DE 10-3 ¶ 3 (depiction of sample items bought by plaintiff's investigator). Luxottica's affiant states that the markings on the glasses are "not consistent with genuine Ray-Ban products." (DE 10-2 ¶ 4) It is not quite clear, however, whether he means to say that these sunglasses are an outright knockoff, or a genuine but "gray market" product intended for distribution outside the U.S.

The statute provides little guidance as to the selection of a statutory damages figure, and much is left to the discretion of the courts. *Luxottica Group S.p.A. v. Individual, Partnership, etc.,* 2017 WL 9324773 at *5 (S.D. Fla. 2017). Relevant factors have included compensation of actual loss, to the extent it can be estimated; the circumstances of the infringement; and deterrence. *See, e.g., Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* 2015 WL 3818622 at *2 (N.D. Ill. June 18, 2015) (surveying case law).

---

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

8

Plaintiff requests statutory damages of $2 million.[5] Although statutory damages should bear some relation to actual damages, *see Shore Enuff,* 2019 WL 4027547 at *6, the lack of a record may impair any such analysis. Judge Kugler noted that the ordinary retail price of Ray Ban sunglasses (Aviator or Wayfarer models) was in the range of $145 in 2016, incorporating a mark-up of approximately $95. The sales, moreover, took place at an identified store or stores on the Atlantic City boardwalk during the summer season. From that information, the judge was able to perform a very rough calculation of the range of lost profits. He awarded $38,000, representing two times the estimated lost profits, or 38 times the minimum statutory damages from those in-store sales. *Id.*

Where a seller is distributing infringing products over the internet, however, a court may find a higher damages figure appropriate, to reflect the potential for greater sales volume or profits:

> Defendant had the potential to reach a wide audience with its counterfeit goods because it advertised them on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store. Compare *Luxottica USA LLC v. The Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 C 9061, 2015 WL 3818622, at *2–3 (N.D. Ill. June 18, 2015) (collecting awards from cases where counterfeiting took place online that found "substantial damages awards appropriate," ranging between $50,000 and $750,000 per mark), *with Coach, Inc. v. Treasure Box, Inc.*, No. 3:11CV468-PBS, 2014 WL 888902, at *4 (N.D. Ind. Mar. 6, 2014) (awarding $3,000 per mark against a brick-and-mortar infringer that was no longer in operation, noting "the small scale of [its] brief operation"); *Coach, Inc. v. Becka*, No. 5:11-CV-371(MTT), 2012 WL 5398830, at *6–7 (M.D. Ga.

---

5   The infringement involved two models of sunglasses (Wayfarer and Aviator glasses) and two registered and incontestable marks (Reg. Nos. 1,093,658 and 1,320,460). Technically, a multiplier of four could be applied. *See* 15 U.S.C. § 1117(c).

9

> Nov. 2, 2012) (awarding $2,000 per mark, noting that the defendant "was operating out of a single small retail location, and [she] did not sell or advertise the counterfeit items on the Internet").

*Luxottica Group S.p.A. v. Li Chen*, 2017 WL 836228 at *3 (N.D. Ill. March 2, 2017). *See also Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 2015 WL 3818622 at *2 (N.D. Ill. June 18, 2015) ("High statutory damages may be appropriate when counterfeiting activities take place online and are capable of reaching a wide audience." (citing *Coach, Inc. v. Tom's Treasure Chest*, No. 2:10–CV–00243, 2011 WL 4399355, at *3 (N.D.Ind. Sept. 21, 2011)).

In another Ray Ban case, *Luxottica Group S.p.A. v. Individual, Partnership, etc.,* 2017 WL 9324773 at *6 (S.D. Fla. Dec. 15, 2017), the court surveyed the precedents and derived from them a baseline figure of $18,000. This it multiplied by the number of types of goods sold (3) and the number of trademarks infringed (7) to arrive at statutory damages figure of $378,000. There, however, the defendants do not seem to have been wholesalers or importers, but ran a single ebay store known as BUYTOSALE.

A defendant's decision to default seems to be, in itself, a major aggravating factor. In *Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 2015 WL 3818622 at *2 (N.D. Ill. June 18, 2015), the court surveyed cases and noted a range of $50,000 to $750,000 per mark. As to one defendant, which had entered an appearance and submitted evidence, the court had "a complete record" of infringing sales. It concluded that this defendant was not a large-scale counterfeiter, had generated revenue in the neighborhood of $800, and had also sought to mitigate the loss by ceasing sales:

> Because this is not a case of default, and based on the mitigating factors identified above, the Court finds it appropriate to reduce the statutory damages Luxottica seeks by two-thirds. Pursuant to 15 U.S.C. § 1117(c), the Court awards Luxottica statutory damages in the amount of $50,000 per mark, for a total award of $150,000.

*Id.* at *3. Other defendants, however, had defaulted, preventing the development of such a record. As to them, the court noted that it had awarded the maximum damages of $2 million, albeit without significant discussion. *Id.*

I carefully consider *Shore Enuff,* a recent, in-district precedent in a case involving Ray-Ban sunglasses. I believe, however, that its award of $38,000 would be far too low in this case. Unlike Judge Kugler, I lack even a rudimentary basis to estimate actual loss. For that evidentiary gap, the defaulting defendant is largely to blame (although the plaintiff could have attempted, I suppose, to subpoena bank records and the like). The defendant here seems to have been acting as a wholesaler or importer, not a retailer like the boardwalk stores in *Shore Enuff.* Indeed, the affidavits indicate that Luxottica settled with the parties at the retail level of the distribution chain. It was through them that plaintiff traced the source of the goods to the more culpable wholesaler or importer, defendant here. Moreover, the defendant here sold the goods, not to walk-in customers in boardwalk stores, but through internet channels.

Examining the other Ray-Ban precedents, I conclude that a $2 million award would also be an outlier. Deterrence, of course, is important, and serves a public function beyond compensation of this plaintiff and punishment of this defendant. The necessary level of deterrence and punishment must take into account that defendant was trafficking in counterfeit goods at the level of importer or wholesale supplier. Also important is the inferable fact that the defendant was willfully taking advantage of a famous mark for which there is

11

considerable consumer demand. That said, I see no indication that the defendant's business was wholly or predominantly devoted to the counterfeiting of Luxxotica goods; this may have been an opportunistic event, although it is impossible to tell on this record. Nor do I get the sense that the defendant's business rivals that of Luxxotica in size or profitability; deterrence may not require the maximum sanction here. And if defendant's sales were truly running in the seven-figure range, it should have been relatively easy for Luxxotica to gather evidence of that.

Weighing all of the above factors, I will award statutory damages at the high end of the range surveyed in *Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 2015 WL 3818622 at *2 (N.D. Ill. June 18, 2015), in the amount of $750,000.

### b. Injunction

The Lanham Act, 15 U.S.C. § 1116(a), authorizes injunctive relief to restrain acts of infringement. The court's discretion is guided by the four traditional equitable factors: (1) irreparable injury; (2) inadequacy of legal remedies; (3) the balance of hardships as between the plaintiff and defendant; and (4) the public interest. *See Shore Enuff*, at *9 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Infringement based on a likelihood of confusion is tantamount to a finding of irreparable injury. *See id.* (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir. 1998)). I have already made such a finding.

Current damages, let alone future damages, are difficult or impossible to calculate as a result of the defendant's default. In addition, an ongoing loss to the plaintiff's business goodwill cannot be readily estimated or compensated in damages. *Id.* (citing *Louis Vuitton v. Mosseri,* 2009 WL 3633882, at *5 (D.N.J. Oct. 2, 2009)).

The balance of hardships favors the plaintiff. Defendant is not being deprived of anything to which it is entitled. Moreover, the plaintiff has done what can reasonably be expected to enforce its rights; defendant's non-appearance implies that efforts to identify and restrain future infringement might not be fruitful. *See id.* (citing *Louis Vuitton, supra*).

The public interest, too, favors Luxxotica here:

[T]here is strong public interest in preserving the integrity, potency, and vitality of the government-granted property right in a registered trademark. See Adam Mossoff, Trademark as a Property Right, GEORGE MASON LAW & ECONOMICS RESEARCH PAPER NO. 17-15, last revised 30 Nov 2018, last found at SSRN: https://ssrn.com/abstract=2941763 on 19 August 2019 explaining the nature of this intellectual property is a use right, i.e., a legal entitlement right, that cannot be separated from a commercial enterprise's goodwill, which is larger than the trademark use right but which "situates" the right and thereby defines its value. Ultimately, this government-granted use right can create, support, and sustain the reputation of a commercial enterprise's products and presence in the market place, which in turn sustains the general market (Id. at 22), which ultimately motivates for strong preservation of a mark owner's rights in the courts.

For these reasons, the court grants plaintiff the relief it seeks by enjoining defendants from infringing and/or counterfeiting the Ray Ban® marks.

*Id. See also Luxottica Group S.p.A. v. Individual, Partnership, etc.,* 2017 WL 9324773 at *6 (S.D. Fla. Dec. 15, 2017) (granting permanent injunction based on finding of infringing sales of Ray-Ban sunglasses); *Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* 2015 WL 3818622 at *3–*4 (N.D. Ill. June 18, 2015) (granting permanent injunction based on finding of infringing sales of Ray-Ban sunglasses).

Permanent injunctive relief will therefore be granted.

## CONCLUSION

The Plaintiff's motion for a default judgment (DE 10) is GRANTED. A default money judgment will be entered in favor of the plaintiff, and against defendant, in a total amount of $750,000. The defendant is permanently enjoined from further acts of infringement, in terms further specified in the accompanying Order and Judgment.

Dated: April 20, 2020

/s/ Kevin McNulty

---

**Kevin McNulty**
**United States District Judge**